May it please the court, Danford Grant on behalf of Deputy Ed Bylsma. This is an adulterated food case arising from the negligence of Burger King and its franchisee. This court, because it's a diversity case, is asked to determine how the Supreme Court of Washington would decide the issue. And the precise issue is, does the Washington Product Liability Act permit a plaintiff to recover for emotional injuries that do not arise from a physical injury? Should we certify that question? If, I don't know if that's procedurally possible. Oh yeah. I'm surprised, I'm surprised that it wasn't done by the Oregon District Court, the Oregon Federal District Court, especially considering that it's a I think that's why I'm not sure the Oregon District Court may or may not have had that authority. We do. Okay. But let me let me say, so you, this precise question you say is basically whether this is the kind of harm, pain and suffering, are the kind of harm that is contemplated under the act, correct? Absolutely. Okay, so if I go back to Fison's, which of course is the key Washington case on this, the, as I read Fison's, the court there was not predicating its holding on the third-party nature of the physician or anything like that. The court says, we perceive the most precise inquiry here to be whether these pain and suffering damages are the type of harm, quote, contemplated as recoverable by the legislature under the PLA. That statement is almost word-for-word the issue that you just framed to us and in Fison's the court said no. So why would we need to certify or go any further than to go to Fison's? Well what Fison's really did was it said let's look at the case law. Fison's acknowledged that it was a third-party case. It specifically said, we find no guidance in the cases where damages for emotional harm are available to a plaintiff for injuries to a third person. Quote, emotional damages caused by a plaintiff witnessing or learning of a third person's physical injuries are only compensable in And then it goes on to say that we're not really worried about the attenuated nature of it or the kind of the bystander person because that's not what we're deciding here. But that, I disagree, Your Honor, because that's exactly what the court decided. The entire inquiry of the court, regardless of its language in the section that you quote, the entire inquiry of the court was whether or not a has the ability to recover for the physician's emotional distress damages based on injury. That's the ultimate case, but that's not what the language of the case says. So that's my concern. What the court then says, well let me, let's march through the various cases that might give us the answer to that. So let me just ask you, you know, and they do that. Let me just ask you just to be clear. I take it that your claim is that you have a strict, do you, in your claim, assert a strict liability claim against Burger King? It's a negligence claim. It's a negligence claim. And under what section? I mean, what, there's different things, you know, there's failure to warn, there's delivering the product in an unsafe way. Right. It's not a failure to warn. It's caused by the negligence. What precise section of the product liability law are you looking to? Well, interestingly, we did not plead the Washington Product Liability Act. Right. Okay. So the question really is when the court, sua sponte, essentially said you have no claim under the Oregon Product Liability Act or under Oregon negligence, we're in that situation, we're effectively going to consider this an amendment on the spot to Washington Product Liability Law and then determine that you have no claim under Washington Product Liability Law. But you're not contesting the applicability of the Washington Product Liability Act? No, we're not. We concede that the Washington Product Liability Act applies, and the only issue before this court is whether or not these emotional distress damages are the type of... Let me give you a hypothetical, and the same side can answer the same hypothetical, that they're making, for Christmas, the product as a jack-in-the-box. And the person who's making it cuts his finger, and blood and the finger go into the jack-in-the-box. And then the person who gets it on Christmas opens it, cranks the jack-in-the-box, and out comes Jack, the finger and blood is sprayed, but not on it, so we don't get into that physical injury aspect. And they scream, and they have nightmares, and they can't go to bed and sleep, and the psychiatrist testifies to all objective symptoms. Is there a claim under the Washington Product Liability Act for the emotional injury? I think there would be. And how do you analyze that? How is that so? I would say, in that particular case, remember what we have here is Burger King's negligence in training, in hiring, in supervising. Right. We don't look at the intentional conduct of, who was it, Herb, was it? I forget the fellow's name. Right. Right. The person that... Right. We don't look at their... Deposited. Yeah. Under the Washington law, it doesn't make a difference whether their conduct was intentional. We look at what the statute requires, and strict liability and negligence are sufficient under the statute, right? Correct. So he didn't get a hamburger, according to Whopper's specifications. He got phlegm added to it. Correct. Correct. Well, let's assume he has a claim. I mean, he's going to fall under, you know, delivery of a product that was defective in some way, whether strict liability or negligence. So let's just assume he has a claim. I think we have to assume he has a claim, because this was a motion for judgment on the pleadings, and... Yeah. So we assume that he's... Well, it could, as a matter of law, not have a claim if something didn't fall under, if it weren't a product. True, but the real issue... But we're just assuming that, as pled, this would fall under the Washington Product Liability Statute. So he has a potential claim under there, and the question is, can he get the emotional damages? Right. Is the remedy part of the harm that is contemplated by the Washington The legislature has told us that to determine what harm is recoverable under the Washington Product Liability Act, we look to the common law. Any damages that the courts of Washington say are recoverable are recoverable under the Washington Product Liability Act, and there is a long line of cases. If that's true, why did the people in FISONS lose? Because in that case, FISONS actually did the correct thing. It went to the cases, realized that what we're talking about is a physician, a third party, and under Washington jurisprudence, that physician is not a foreseeable plaintiff. But that's not what the case said. It's not what that part of the case said, but the entire other cases. Were they really saying, okay, you have strict liability down here, and then you have negligence, and then you have the intentional torts, and of course, it looked at the intentional torts as not being instructive, correct? Correct. Okay. And because strict liability is under that, I'm just having some trouble understanding where you tie it solely to the third party. Point me to the language where the court says that's the basis for its decision, because that's not how it framed the issue. Well, I think that those were the facts in FISONS. Point me to the language. In FISONS? Yes. Other than the language I've already quoted you, I cannot point you to the language as to why the court did not distinguish. The only language you're pointing, point me to the specific language that you rely on, just so I'll go back and read that again. Sure. We look to the cases, and in the cases, we find no guidance where damages for emotional harm are available to a plaintiff for injuries to a third person. I submit that had we had the BILSMA situation in FISONS, the court would have looked to the cases that provide for the direct prong of cases, and would have said, we see numerous cases in which the court awards emotional damages to a person who is the actual direct recipient of the product. But the court didn't go down that prong, because it was a third party case, and then the court, simply in the language you cite, didn't really distinguish, excuse me, at that point. But the case has to rest on its particular facts, especially when we consider, really, a hundred years of jurisprudence that do permit emotional distress damages in cases where the recipient is the direct line of cases. The cases that limit it, the cases that don't permit it, the Colbert case, the Moomba, the Cunningham case, those are third party cases, the Hagel case. The cases that do allow it are both direct and third party. The third party cases that permit it, permit it when the plaintiff is considered a foreseeable plaintiff. So you have this, so the direct cases allow it, the third party cases sometimes allow it, and often don't. What we have here is Deputy Bilsma, who was the recipient of the product. He received it. The case that's, I mean, what we need to do is really take a look at what the state of the law was in 1981, when the legislature passed the Product Liability Act. The case that had been decided just before that is probably the closest on point case for us, and that's the Korogel case, where the mother put her hands in her deceased son's cremated bones and ashes thinking it was packing material, no physical injury whatsoever. She had a claim for emotional distress damages. That was 1978. In 1981, our legislation Not involving a product, however. Not involving a product, but in 1981 That's the famous Washington case that you learn in the bar review. Korogel? Not involving a product, however, in passing the Product Liability Act, the, first of all, the legislature didn't say we allow any harm allowed by the courts of Washington in product liability cases. It said specifically, in fact, it rejected the Uniform Product Liability Act's definition of harm that limited the recovery of emotional distress damages, and it said, no, we're not going to apply that limitation. We are going to simply define it by looking to the common law. That was the common law at that time. Yes, the common law has evolved since, but it has evolved in a way where the limitations drawn are all around third party cases. And in fact, the law has actually expanded because in Hagel, they threw out the objective manifestation requirement. Doesn't matter for us, we have it here. Do you want to save the remaining time? I do, thanks. May it please the court, I'm Barry Gaylor on behalf of both defendants, Burger King Corporation and Kaizen Restaurants. I think probably the first place to start since the hypothetical was presented about the jack-in-the-box, that's probably a logical place to start. I probably shouldn't use jack-in-the-box in the Burger King case, but I didn't think of that. Or any other toy for that matter. The answer should be pretty clear, and that there is no right of recovery under the jack-in-the-box scenario with the jack-in-the-box popping up with a finger in it. And the reason why is, I mean, both Faison's and the Hilt-Brunner case provide that where there's a statutory action, and that would be a product liability action, where there's a statutory action, emotional distress damages that aren't attendant to physical injury have to be based on an intentional standard of conduct within that statutory action. And so I think you can say, well, gee, shouldn't the person, the person really was shocked, shouldn't they get some kind of recovery? I think the product liability act and statutory actions in general are pretty clear that that would not result. Isn't that only where the statute doesn't specify the damages? You know, I think that's an interesting, one of the things that the lower court, the way the lower court looked at it was a two-step analysis, and the appellant's briefing talks about a two-step analysis. And the Hilt-Brunner case actually doesn't say two-step analysis. How that was captioned was the defendant, Mobile Home Park, made two different arguments. The first argument was that the statute excluded damages for emotional distress. And so that was line one of their, you know, line one of their attack was saying that the statute excluded it. And obviously, if that were the case, that would have been the end of the story. And the court went, you know, went through its analysis and said, it neither, you know, expressly includes it or excludes it. And for that reason, they found the statute silent and then looked at the rule in terms of whether they could apply emotional distress damages. And that's where the court in the Hilt-Brunner case summarized Fison's and used that as an example of prior occasions where for statutory action, emotional distress damages have been cut off. And I think that's the other question that was asked early on of appellant's counsel was should the court certify the question. And I think the answer is no, because this isn't a question or a case of predicting what the Supreme Court would do with the case or trying to anticipate what the result would be from the Supreme Court. The Supreme Court's already decided. We've got Fison's. We've got the Hilt-Brunner case. And they've already established a rule. And this is really just a matter of applying the rule to the case. And so I think that, in its most straightforward form, applying Hilt-Brunner is the end of the story. That said, I think talking a little bit about the negligent infliction of emotional distress warrants some attention. And I think the starting point here is to look at emotional distress without physical injury is a limited cause of action. And it's not a case of carving out exceptions where it does not apply. The rule early on in tort jurisprudence was there is no such thing. There's no such thing as emotional distress without physical injury. And then the court moved on over time to find particular circumstances where they would apply it. And those are very rare circumstances. And the bystander cases, by far, at least in Washington, the bystander cases are the greatest body of reported cases. Other kinds of- I recognize that in bystanders, doesn't that make it a stronger argument that the direct claimant ought to be able to recover them? Who's a direct claimant? Billsma. I think, and you won't find in any case anywhere a distinguishment between direct claimant and third-party claimant. Well, Faison's. Faison's talks about him as basically not, I mean, they look to the bystander cases, but they didn't- The victim in Faison's was the little baby, the two-year-old, that was harmed by Faison's drug. And the problem was, the question was whether or not the treating physician was somehow entitled to recover for his emotional damages when Faison's had failed to warn doctors about the potential of this. Your Honor, I think if I can address that, that where there's no physical injury, everyone's a bystander. There's no such thing as saying you're the victim of the whatever it is, because there's- If that's the case, then Ms. Korogel suffered no harm. She was also in a position- Well, Korogel, first of all, is in good law. It's not good law. It's been, and that's where the Colbert or Colbert case specifically said that. That basically- They didn't overrule it. They didn't overrule it, Your Honor. They said it was modified. I'll get to it. They say that- But Korogel, plaintiff, was physically present and actually felt her son's remains as a result of the funeral home's negligence. Moreover, Korogel was decided shortly after Hunsley and before Gane and Hagel at a time when this court tested a claim of negligence, infliction of emotional distress only against the general elements of a tort claim, and no more. And they say, as explained in Gane and Hagel, placed limits on liability for negligent infliction of emotional stress that were not imposed in Hunsley. And these limits were not considered in Korogel. But they didn't overrule Korogel. Just you have to read Korogel in light of Gane and Hagel, which really, I think the most important thing that they're saying there is she actually touched it. I mean, the injury was directed to her. But if you're right, in terms of the, is it the Hilt-Berner case? In Fison, wouldn't they have just, the Supreme Court just said, look, there's no intent required. The statute's silent on this. So there is no emotional distress injuries for any product action, period. Your Honor, Hilt-Berner came after Fison's. And so I think it's a developed doctrine. And in Fison's, they were, the court was trying to basically figure it out. And then after figuring out Hilt-Berner, basically extended it and came up with what was stated as the rule, a pretty bright line rule in the case. And I think the rule makes sense, too. Did you have a statute in that Mobile Park Act that said, like RCW 7.72.0106 defines harm as, quote, including any damages recognized by the courts of the state? No, Your Honor, I believe it just said damages. You know, damages from the statutory action. So it didn't have the same kind of statutory language. So any damages recognized by the courts of the state where they do recognize emotional distress damages would be included, right? Conceivably, they could. However, I think that- Then that wouldn't make any sense in light of Fison's and Hilt-Berner. Right. If you read that, then it, those cases would go out the window because they couldn't put that limitation on it. And I think Hilt-Berner, the rule in Hilt-Berner makes sense. Again, looking at the development of emotional distress claims, where we've got an intentional act, there's clear law, the tort of outrage, and in particular, intentional cases are easy. Negligence, again, we're saying it's a limited circumstance. The courts only recognize it in unique cases along the way. Strict liability, never. And so if you've got a liability that can be imposed based on strict liability, there's no support to say that the damages could be only emotional distress. And that's really the- But it seems to be the two factors that we have arguing against your position are Deputy Bilsma is the party who was harmed by the conduct and you've got an underlying statute that has strict liability. That seems to me to be a harder case for you to argue that you are under no obligation to pay damages to Bilsma for whatever the emotional distress would be. Because no court anywhere to my knowledge has ever awarded just damages based on strict liability for just emotional distress in the absence of physical injury. And that's why it would be unprecedented to have strict liability result in damages for emotional distress only. And think of- You mean damages recognized by the courts of the state. Does that mean that this is a form of damages recognized or does it mean that the courts of the state have permitted damages in these circumstances? Look, I don't know that that's particularly clear just from the text of the statute. I think the way Fissons applied it was to see whether this was the kind of harm that the legislature intended was included. And that's how Fissons ran through it and said, we don't think that it is. We don't think that- And declined to expand the law to include that, those particular facts. Let me ask you, say he ate the hamburger, he bit into the hamburger and he saw what was there, but he swallowed it and he had all sorts of intestinal distress and he had objective physical symptoms. Could he get emotional distress damages? Attendant to the physical injury, to the consumption? Absolutely, absolutely. Why so in your approach? Because there would, because that would involve, I mean, it would be a consequence of the physical injury of consuming this foreign body or foreign substance. And I think that is an injury. And I think, I don't think any court anywhere would have trouble with that. There's all these, the courts have said, if there's a physical injury in these negligence cases, you can claim the emotional damages attendant to that. Yes, Your Honor. So this is just, if you take out the physical injury, do you have a freestanding emotional distress claim? Yes, Your Honor. And the question then is, does, for example, does FISNs only define that as in a bystander context? Or does it define it legally with or without being a bystander? I think it defines it both in the bystander context and any other context. And I think, again, going back to the, but if you're right, and this, I come back to footnote three. And this is from the Washington Supreme Court. It's 2008. This is Colbert versus Mamba Sports. If you're right, they would have wrote footnote three differently. They would have said that Colbert, that Corrigal no longer applies. But what they said, and it was totally unnecessary for them to say this, if you're right. They said, but in Corrigal, the plaintiff was physically present and actually felt her son's remains as a result of the funeral home's negligence. And then they go, moreover, it was decided before Gane and Hagel. So the way I read this is, Corrigal is still good law, but subject to the limitations placed by Gane and Hagel. But Gane and Hagel were third party cases, weren't they? Again, I don't, that's. And Corrigal was based upon the Hunsley, just general negligence standards. If you're right, the Supreme Court of Washington would have said that Corrigal didn't suffer injury. And so it doesn't apply to her. They didn't suffer physical injury. First off, Corrigal wasn't a product case. And how would Corrigal be decided now, we don't know. I mean, if it were good law, the court would have said so. So it was saying, hey, maybe it is, maybe it isn't. After, you know, based on current rules. But I think the most important thing is that this, Corrigal was not a product liability. And they were looking at negligence as the standard of harm. And, or as the standard of conduct. But there are some negligence aspects of the product liability law, correct? There are, and that's, I've got 30 seconds for one point to make. It doesn't matter how they plead their product case, there's still the potential, the statute has the potential for product liability based on strict liability. So we can't say, okay, it's harm only if you plead this as negligence, but you're not gonna get the harm for strict liability. That doesn't make sense, that would rewrite the statute. So winner take all or loser take all of proposition in your view? Yes, Your Honor. Oh, what they said is, sit down. Oh, go ahead. But the damages provision, is any damages allowed by the courts of Washington? And it would be erroneous, I think, to say it's only damages if you've got negligence proven, and it's not damages if you're strict liability. I don't think we can carve out the statute that way. Right, I agree with that. But still, it seems to me that that provision says that if the courts are allowing emotional distress damages without physical injury, then that damage is recoverable under the product liability statute. And that would change things a lot by making things that the rest of the world, the rest of Washington law would require negligence. It would say, okay, all of a sudden, product liability gets you more stuff than you would have gotten on the outside.  Before you sit down. Yes, Your Honor. When the employee pled guilty to felony assault in Clark County, was it because he had tested positive for hepatitis? I don't know that. I would assume it was because he intended to cause physical injury and pled to the elements of assault, so I don't. Felony. Felony assault, so the fact that he simply put some phlegm on the deputy's hamburger would not be felony assault, as I understand the elements under Washington law. But if he knew that he was positive for a contagious disease, that would be a felony assault. Actually, and I think if I remember, and this is kind of far afield from the actual legal issues, but I think that if I remember the record right, the spitter misbehaving former employee was not hepatitis positive, and the other person, the guy that was at the window was. So I think, I'm not sure why he pled the way he pled, but that's how it came out. Thank you. I think you have about a minute left. Thank you. I'd like to just make a couple points. First of all, there's the Bishop case from 1995 that specifically states there is a distinction between direct and third party claimants. It's a Division III case, but it does use the precise language. Still, I think even if that case hadn't used that precise language, the line of cases makes it clear that courts treat them differently. I'd also like to elaborate on an answer I gave before. You asked me to point to specific language in FISONs. I want to quote briefly out of FISONs at 8.58 p.s. 10.65. Couple disjointed quotes here that I'm going to combine. It says, quote, in this case, however, we are asked to extend recovery for a kind of harm that we do not perceive as having been contemplated by Washington law, that is, emotional distress suffered by a physician as a result of injury to his patient. Emotional damages caused by a plaintiff witnessing or learning of a third person's physical injuries are only compensable in Washington under very limited circumstances. And then the court focuses in on this narrow issue. Quote, in this case, we are faced with the unusual situation of a plaintiff who is not a relative of the injured party seeking to recover pain and suffering damages as a result of the physical injuries suffered by another. That was the narrow issue in FISONs that the court was addressing. Want to focus on Hilt Bruner for a minute? The statutory case? You used all your time, so just one last point. Why don't you make one last point? Hilt Bruner was addressed by Price, which rejected the reasoning. There are the Anderson case and the Byer case, which both are statutory cases that allow emotional distress without intentional conduct. This is not a legislative created cause of action. It is a legislative codified cause of action established under the common law, these damages. Hilt Bruner is easily distinguishable as we state in our briefs. Thank you. Thank you. I'd like to thank you both for the argument this morning, a very interesting and novel case. With that, the case of Dilsma v. Burger King is submitted and we're adjourned for the morning. All rise.
judges: Moskowitz, McKeown, Tallman